UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CANDY PARKER, § | | |
| *Plaintiff*, § | | |
| § | | |
| vs. § | | Civil Action No. 4:17-cv-01124 |
| § | | |
| HOME DEPOT, U.S.A., INC. § | | |
| *Defendant*. § | | |

## PLAINTIFF'S SECOND AMENDED COMPLAINT

TO THE HONORABLE JUDGES OF SAID COURT:

Comes Now, Candy Parker ("Plaintiff"), and files Plaintiff's Second Amended Complaint against Home Depot U.S.A., Inc. ("Home Depot" or "Defendant"), and would respectfully show the Honorable Court as follows:

### I. PARTIES

1. Plaintiff, Candy Parker is an individual residing in Fort Bend County, Texas.

2. Defendant, Home Depot U.S.A., Inc. is a Delaware corporation doing business in the State of Texas, and is before this Honorable Court having answered in State Court and removing the matter to Federal Court.

### II.
### JURISDICTION AND VENUE

3. The matter in controversy exceeds the sum of $75,000, exclusive of costs and interest and there is complete diversity of citizenship between Plaintiff and Defendant. Venue is proper in this Court pursuant to 28 U.S.C.A. § 1391 as all events giving rise to this controversy occurred within Brazoria County, which lies within the jurisdictional limits of this Houston Division of the Southern District of Texas.

## III.
## FACTS

4.  On December 22, 2016, Plaintiff was working in the course and scope of her employment with Home Depot in Richmond, Texas. Home Depot is a "nonsubscriber" to the Texas Worker's Compensation System.

5.  On that date, Plaintiff was instructed to work as a "Spotter" in order to assist two other Home Depot associates who were tasked with gathering a large load of lumber for a customer. Plaintiff cordoned off isles, and was on the adjoining isle while the Lumber Associate used a fork lift to obtain and lower a large load of lumber, and then place the same on a cart. Plaintiff's co-workers also selected a hollow frame cart to carry the load.

6.  Home Depot supplies wood spacers, known as "stickers," which come with lumber pallets, to serve as spacers for forklift arms to reach under a load, as well as support for loads on carts. Stickers are non-uniform grade wood dunnage and are not appropriate equipment for Home Depot's repurposed-use of weight support structure for heavy loads on hollow frame carts.

7.  Home Depot provides no formal training or instructions regarding the use of wooden stickers, nor how to safely load lumber onto carts.

8.  The Lumber Associate loaded 15 6x6x16 boards, or alternatively, 6x4x16s, that were picked from the bunk, using a forklift, in three columns, five boards high.

9.  The Lumber Associate then selected and placed two wooden stickers across the hollow surface of the cart. However, the stickers were not placed over the metal frame of the cart, and were instead placed across the unsupported portion of the cart. The stickers were supporting the full weight of the load of lumber.

10.  Additionally, the load was improperly placed on the cart. The load was placed to one side of

the cart, placing stress on the stickers, as well as making the cart off balance.

11. Upon Plaintiff returning from the next isle where she was positioned in order to close off the isle, Plaintiff observed the configuration of the load. Plaintiff instructed the Lumber Associate that the cart was improperly loaded, unsafe, and would be difficult to push. The two co-workers had a brief argument about the load being improper and difficult to push. The Lumber Associate then, without warning, pushed on the cart in an apparent attempt to prove that he could move it despite the uneven nature and weight of the load. At that time, the stickers supporting the load broke, causing the load to fall onto the cart and Plaintiff's left index finger.

12. As a result, Plaintiff's left index finger was crushed to the extent that a portion of the finger was mangled and amputated.

13. Home Depot maintains no written policies or procedures regarding how to load lumber onto carts, nor the use of stickers. Moreover, Home Depot either improperly trained, or failed to train, its employees regarding the type of work being performed when the incident occurred.

14. Home Depot testified through its corporate representative that Plaintiff's actions were the sole cause of the incident. Home Depot denied that it did anything wrong and repeatedly denied the existence of company incident reports. However, it was later discovered that not only were there incident reports, but one of the incident reports was signed by the same corporate representative that testified that there were no incident reports. Corporate Representative, Phillip Lewis's report cites "heavy product" and "use of carts" as factors that contributed to the incident, and further stated that "training" was required to prevent a re-occurrence of the incident. Incident reports also state that the carts could have been hand-stacked. Despite its own findings of improper training, and improper procedures (that it attempted to conceal,) Home Depot didn't conduct further training, nor issue any reprimands. In fact, Home Depot eventually promoted the subject Lumber Associate, and then tried

to force Plaintiff to report to him as her manager. Home Depot's lack of training, lack of reprimands, and indeed promotion of the Lumber Associate are facts consistent with it condoning the Lumber Associate's actions and show its willful violation of applicable OSHA standards.

## V.
## CAUSES OF ACTION

15. The negligence and gross negligence of Home Depot was the proximate cause of the injuries and damages to the Plaintiff, as set forth below. Home Depot failed in one or more of the following particulars:

   A. In failing to provide a safe working environment for its employees, including Plaintiff;
   B. In failing to properly train employees to handle, load, and move, lumber;
   C. In failing to provide appropriate and safe tools and/or equipment to handle, load, and move lumber;
   D. In failing to provide safety standards within its premises to avoid incidents when handling lumber orders;
   E. In failing to enforce safety standards set in place to avoid incidents such as this one;
   F. In failing to maintain its tools and/or equipment in good and safe working order;
   G. In failing to repair known damaged tools/equipment;
   H. In failing to warn its employees of the risk posed by handling of lumber orders; and
   I. In failing as an employer to adhere and enforce safety regulations set by the Occupational Safety and Health Administration.

16. The above and foregoing acts and/or omissions were a proximate cause of Plaintiff's injuries and damages and were committed and/or omitted by Home Depot, its agents, servants, and/or employees in the course and scope of its agency, representation and/or employment.

17. The actions of the Lumber Associate clearly constitute negligence. He was working within the course and scope of his employment with Home Depot at the time of the Incident. Therefore, Home Depot is vicariously liable for his negligence through the legal theory of Respondeat Superior.

## VI.
## **GROSS NEGLIGENCE**

18. The facts stated above are incorporated by reference.

19. Home Depot provided inappropriate equipment and inadequate training in regards to loading and moving heavy, and potentially dangerous loads of lumber. When viewed objectively from Home Depot's standpoint, its acts and omissions involved an extreme degree of risk, considering the probability and magnitude of potential harm to others. Moreover, Home Depot had actual, subjective awareness of the risk, but failed to provide proper training or appropriate equipment. Accordingly, Home Depot's individual acts and omissions rise to the level of gross negligence.

## VI.
## DAMAGES

20. Because of the actions and conduct of Defendant set forth above, Plaintiff suffered bodily injuries and damages. By reason of those injuries and the damages flowing in law therefrom, this suit is maintained.

21. Because of the nature and severity of the injuries Plaintiff sustained, she has suffered physical pain, mental anguish, physical impairment, and disfigurement, and, in reasonable probability, will continue to suffer physical pain, mental anguish, physical impairment and disfigurement into the future. The injuries sustained by Plaintiff have required medical treatment in the past and, in reasonable probability, will require other and additional medical treatment in the future. As such, Plaintiff seeks damages for pain, mental anguish, physical impairment, disfigurement, past medical expenses as well as reasonable future medical expenses.

22. Plaintiff also specifically seeks exemplary damages.

## VII.
## JURY DEMAND

23. Plaintiff hereby demands a trial by jury.

## VIII.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant that upon final trial, Plaintiff recovers actual damages as specified above from Defendant, plus costs of Court, pre-judgment and post-judgment interest at the legal rate, and have such other and further relief, general and special, at law and in equity, as well as exemplary, to which Plaintiff may be justly entitled under the facts and circumstances.

Respectfully submitted,

ATTORNEY BRIAN WHITE & ASSOCIATES, P.C.
3120 Southwest Freeway, Ste. 350
Houston, Texas 77098
(713) 224-4878 telephone
(713) 237-0510 facsimile

BY:

*/s/ Brian E. White*
Brian E. White
S.D. Tex. Bar No.: 31893
Texas Bar No.: 24034736
Email: Brian@AttorneyBrianWhite.com
*Attorney-In-Charge For Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been forwarded via e-mail, e-filing, facsimile, or certified by me or on my behalf on this 16th day of April, 2018 to the following:

***Via Electronic Notice:***
Chad L. Farrar
C. Brett Stecklein
Katie P. Harrison
Mullin, Hoard & Brown, L.L.P.
2515 McKinney Ave., Ste. 900
Dallas, Texas 75201

*/s/ Brian E. White*
Brian E. White